UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUZANNE M. CONTI,

       Plaintiff,

vs.

AMERICAN AXLE & MFG., INC.,

       Defendant.
_____/

Civil Action No.
05-72335

HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

This matter is before the Court on Defendant's motion for summary judgment. Plaintiff has filed a response brief and Defendant has filed a reply brief. Pursuant to E.D. Mich. LR 7.1(e)(2), the Court shall decide this motion without oral argument.

Plaintiff, Suzanne Conti, has held an executive position with American Axle & Manufacturing, Inc. ("AAM" or "Defendant") since 1997. Plaintiff is still employed with Defendant. Plaintiff brings the present suit against Defendant, alleging violations by Defendant of the Elliott-Larsen Civil Rights Act and the Equal Pay Act.

**II.    Facts**

Plaintiff submitted an application for employment with AAM on October 16, 1996, indicating that the desired an executive position. She was offered a position on November 20, 1996 as a Salaried Executive in Training ("SEIT") in Defendant's procurement department. She was given a $10,000.00 hiring bonus, and her salary was $90,000.00 per year. On April 1, 1997, Plaintiff became Commodity Manager in the Procurement department.

Defendant contends that soon after her hire, Plaintiff exhibited poor interpersonal skills, and was not able to work effectively with her co-workers. Defendant attaches its notes regarding meetings it held to discuss Plaintiff's job performance. Dft. Exh. 10. According to Defendant's notes, Plaintiff's coworkers and superiors found her to be confrontational, insubordinate, arrogant, unprofessional, as having a bad attitude, and that her department was in chaos due to her poor management style. Id. Defendant temporarily transferred Plaintiff to a position without any direct reports, identified specific goals for her, and had her attend a multi-day management training class. Dft. Exh. 11 and 12.

Plaintiff argues that she had to deal with a work environment that was competitive and in which the use of profanity and physical aggression are not uncommon. She further states that she faced a variety of sexually charged, harassing behavior during her employment. She does not state, however, that she ever reported such offensive behavior, or that the people she now accuses of such behavior were responsible for any hiring or promotion decision that affected her.

Plaintiff further states that her performance reviews indicated that she maintained positive working relationships, effectively applied sound management principles, honored the chain of command and performed with high standards of excellence and honesty. Pltf. Exh. 10. The exhibits attached are performance reviews dated from 2001 forward, with the 2001 exhibit noting that she did not at that time have any direct reports. Neither party attaches performance reviews prior to 2001.

Plaintiff argues that Defendant has a glass ceiling through which no woman has been able to break. In support of her argument, she states that neither she nor any other woman at AAM has ever been an Executive Director, Plant Manager or Vice President. She further states that since

1997, executive positions at AAM have increased from 162 to 327, yet a woman has never held an executive position. Plaintiff further offers an expert report that women at AAM typically occupy the low level of AAM's pay bands, which can not be explained by random variation. Plft. Exh. G.

Plaintiff argues that excerpts from Richard Dauch's book, *Passion for Manufacturing*, demonstrate his discriminatory views and disdain for women and for Equal Employment Opportunity Laws. The Court will not consider unsworn writings contained in a book intended for the general public as evidence in this matter of what occurred to Plaintiff while employed with Defendant.

Defendant, however, states that it has worked with Plaintiff to develop Plaintiff's career with the expectation that she would eventually be promoted to a Director position. Defendant's Staff Planning records show that in 1998 and in 2000 Defendant expected Plaintiff to be ready for a Director position by 2003. Dft. Exh. 14.

In January, 2003, Abdallah Shanti, Vice President of Procurement, promoted Plaintiff to Director of Indirect Material Strategic Sourcing, reporting to Shanti. In her new position, Plaintiff became a peer to Larry Earhart, who had previously been her supervisor. Following her promotion, Plaintiff's annual salary was higher than Earhart's, even though they were now co-Directors.

Plaintiff's supervisor, Shanti, testified in his deposition that after Plaintiff's promotion, he received numerous complaints about Plaintiff's managerial skills. Dft. Exh. 1B. In June 2003, Shanti moved both Plaintiff and Earhart out of the department to different positions. Earhart was transferred from Director in the executive ranks to a non-executive position in the Quality Development department. His base salary was not cut, but he was no longer eligible for the bonuses given to executive employees.

3

Plaintiff, by comparison, did not lose her bonus eligibility. Her new position was that of a SEIT-New Model Launch in the Materials department reporting to Director-New Model Launch, Mike Panucci. She was expected to take over Panucci's position upon his departure.

In January, 2004, Panucci vacated the Director-New Model Launch position, and Plaintiff transferred into it. Upon the transfer, Defendant reclassified the position from Director to Manager. Plaintiff's new position was titled Manager-New Model Launch, and it was considered an executive level position, which allowed for Plaintiff's continued eligibility for executive level bonuses. In addition. Plaintiff continued to receive her previous salary. In this position, Plaintiff does not have any direct reports, and Defendant contends that without any direct reports, Plaintiff has not had the same degree of problems as she did when she supervised a number of subordinates.

Defendant states that, prior to Panucci's occupying the position, it had previously been classified as a Manager position. Defendant further states that the decision to reclassify the position was based on an assessment of Plaintiff's actual duties in the position. Defendant explains that for the eight years before Panucci held the position, from 1994 to 2002, the position was held by a Manager, not a Director, male Satish Raheja. Defendant further states that Panucci assumed the position after Raheja's unexpected death, and that AAM appointed Panucci to the position because it wanted someone with significant manufacturing experience that could expand the duties of the position. Defendant describes Panucci as having an engineering degree and 42 years' experience in the automobile manufacturing industry. Defendant further states that once Plaintiff took over the position, the duties of the position reverted to those that Raheja had performed, and so it accordingly reverted the title of the position as well.

Raheja's salary in the New Model Launch position was $79,584 when he died in 2002.

4

Panucci, upon his transfer to the position in August 2002, retained the salary of $171,288 that he received in his prior position. Likewise, when Plaintiff transferred to the position, she retained the $114,996 salary of her previous position, one year after Raheja's death, when he had earned approximately $35,000 less than her.

Today, Plaintiff is the Manager of Engineering Change Request and Launch, a position she has held since January 2004. Plaintiff claims that since holding this position, she has been passed over for promotion for numerous positions for which she claims she is better qualified than the men who obtained such positions.

Plaintiff argues that her transfer out of Purchasing and the end of her brief tenure as a Director was the result of her involvement in protected activity. She states that three weeks after becoming a Director, on April 11, 2003, she met with outside counsel to prepare for her deposition in a discrimination case brought by a former AAM employee. She states that during her preparation for the deposition she told AAM's outside counsel that she had been instructed by the head of Purchasing not to hire women who were overweight or were mothers. Plaintiff states that outside counsel told her that she would write up Plaintiff's comments and submit them to AAM's senior management. Plaintiff argues that one day after the meeting with AAM's outside counsel, Defendant began a series of retaliatory action against her. She states that on April 14, 2003, she was removed from speaking at AAM's Supplier Day event; on April 15, 2003, she was ordered not to release her new organization roll-out to the plants with her name as Director; and from April 15-30, 2003, her superiors actively solicited negative feedback from employees about her. On June 9, 2003, Plaintiff's position was changed to that of SEIT-New Model Launch in the Materials department.

5

In October 2004, Plaintiff filed a Charge with the EEOC, alleging that Plaintiff had subjected her to discrimination, retaliation, and unequal pay in comparison to male employees at AAM. The EEOC dismissed the charge, stating that the evidence failed to support Plaintiff's allegations.

### III.    Summary Judgment Standard

Summary judgment is proper where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. In considering a motion for summary judgment, the Court will construe all facts in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). There are no genuine issues of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id. If the movant carries its burden of showing an absence of evidence to support a claim, then the nonmovant must demonstrate by affidavits, depositions, answers to interrogatories, and admissions that a genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986).

### IV.    Analysis

#### A.    ELCRA Claims

Plaintiff may be able to prove discrimination using either direct or indirect evidence of her claims. As explained by the Michigan Supreme Court, in addressing the evidence that can be brought to fight a motion for summary judgment in ELCRA matters,

> In some discrimination cases, the plaintiff is able to produce direct evidence of [gender] bias. In such cases, the plaintiff can go forward and prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case. For purposes of the analogous federal Civil Rights Act, the Sixth Circuit Court of Appeals has defined "direct evidence" as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering-Plough Healthcare Products Sales Corp., 176 F.3d 921, 926 (C.A.6, 1999).

In many cases, however, no direct evidence of impermissible bias can be located. In order to avoid summary disposition, the plaintiff must then proceed through the familiar steps set forth in McDonnell Douglas. The McDonnell Douglas approach allows a plaintiff "to present a rebuttable prima facie case on the basis of proofs from which a factfinder could infer that the plaintiff was the victim of unlawful discrimination." DeBrow, supra at 537-538, 620 N.W.2d 836. Although originally created for use in race discrimination cases, we have adopted the McDonnell Douglas approach for use in age and gender discrimination cases brought under the Michigan Civil Rights Act as well.

Hazle v. Ford Motor Co., 464 Mich. 456, 462-463.

As one theory of recovery, Plaintiff may attempt to prove intentional discrimination by presenting credible, direct evidence of discriminatory intent on the part of the decision-maker. Terbovitz v. Fiscal Court of Adair County, 825 F.2d 111, 114-15 (6th Cir.1987). To establish a claim of intentional discrimination, Plaintiff must show (1) that she was a member of a protected class, (2) she was discharged, and (3) the person responsible for the termination decision was (a) predisposed to discriminate against persons in the protected class and (b) actually acted on that predisposition in the discharge decision. See Thomas v. Hoyt, Brumm & Link, Inc., 910 F.Supp. 1280 (E.D.Mich.1994).

Plaintiff, in her response brief, first attempts to offer direct evidence of discrimination to prove her ELCRA claims. Her offer of direct evidence consists of excerpts from AAM CEO Dick Dauch's book regarding the treatment of women; her contention that Dick Dauch was directly involved in all hiring and promotion decisions; and Plaintiff's contention that her superior, Roy Langenbach, instructed her not to hire women who were overweight or mothers. Plaintiff also offers statistical evidence showing that Defendant has never had a female Executive Director, Plant Manager or Vice President, and that only a small percentage of its lower-level executives are female.

7

According to Plaintiff's expert report, the absence of women in these executive positions cannot be ascribed to chance.

These contentions, however, are not direct evidence of the failure to promote or demote Plaintiff due to her gender. "Direct evidence is evidence, which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Sniecinski v. Blue Cross & Blue Shield of Mich., 469 Mich. 124, 132-33 (2003). Plaintiff's allegations may offer evidence that gender may have played a roll in the overall management and hiring decisions of Defendant. However, Plaintiff's allegations do not "require the conclusion" that Plaintiff's gender was a motivating factor in employment decisions specifically affecting her, and thus do not constitute direct evidence of discrimination.

Here, where Plaintiff offers no direct evidence of gender discrimination, she is constrained to rely on the McDonnell Douglas framework.

Pursuant to the McDonnell Douglas framework, in order to establish a prima facie case of gender discrimination under the ELCRA, Plaintiff must prove she: (1) was a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position for which she applied; and (4) the adverse action occurred under circumstances giving rise to an inference of unlawful discrimination. Hazle, 464 Mich. at 462-63. If Plaintiff satisfies this burden of proof, then she has established a rebuttable presumption of discrimination. Id.

If Plaintiff establishes such a prima facie case, Defendant then has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by Plaintiff's prima facie case. Hazle, 464 Mich. at 464. Defendant then has the burden of producing evidence that its employment actions were taken for a legitimate,

nondiscriminatory reason. If the employer makes such an articulation, the presumption created by the McDonnell Douglas prima facie case drops away. Id. at 465.

In determining whether an employment decision is a "legitimate, nondiscriminatory" one, courts may not analyze the "soundness" of that decision. In other words, courts must not second guess whether the employment decision was "wise, shrewd, prudent, or competent." Town v. Michigan Bell Telephone Co., 455 Mich. 688, 704 (1997). Instead, the focus is on whether the decision was "lawful," that is, one that is not motivated by a "discriminatory animus." Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 257 (1981).

At that point, in order to survive a motion for summary disposition, Plaintiff must demonstrate that the evidence in the case, when construed in Plaintiff's favor, is "sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." Lytle v. Malady, 458 Mich. 153, 176 (1998). As the Michigan Supreme Court has held, a plaintiff "must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful] discrimination." Id.

1.  **Failure to Promote**

As explained above, to establish a prima facie case of gender discrimination under the ELCRA, Plaintiff must prove she (1) was a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position for which she applied; and (4) the adverse action occurred under circumstances giving rise to an inference of unlawful discrimination. Hazle v. Ford Motor Co., 464 Mich. 456, 463 (2001).

Rumors, conclusory allegations and subjective beliefs are insufficient evidence to establish

9

a claim of discrimination as a matter of law. Mitchell v. Toledo Hosp., 964 F.2d 577, 585 (6th Cir. 1992). To prove disparate treatment, Plaintiff must show that the people to whom she is compared, or "comparables," are "similarly situated in all respects." Id. at 583.

Plaintiff alleges that she was treated differently than males at AAM with regards to access to certain Vice President and Director positions in the Procurement and Materials Department. Defendant argues in its motion that Plaintiff's alleged comparables were not similarly situated to her. The "similarly situated" standard refers only to those aspects of the position that are relevant to the position itself. "Courts . . . should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee. The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;' rather . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the relevant aspects.'" Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)(internal citations omitted).

If Plaintiff establishes a prima facie case of gender discrimination, and Defendant offers a non-discriminatory reason for the adverse action, Plaintiff may not attack the soundness of Defendant's business judgment as a means of showing pretext. Brocklehurst v. PPG Industries, Inc., 123 F.3d 890, 898 (6th Cir. 1997).

Defendant, in its motion, reviews the educational and professional backgrounds of Plaintiff's comparators in vice president and director positions at AAM. They are summarized as follows:

- Abdallah Shanti: Became Vice President of Procurement in 2002. Prior to that, was an Executive Director for AAM, and was AAM's Chief Information Officer ("CIO"). After becoming Vice President, held dual position of VP and CIO. Before working for AAM, was General Director for GM and held VP positions with Lucas-Varity and Kelsey-Hayes

- Company, and a Director Position with Perot Systems. Has a BS and MS in industrial technology; MS in computer science and engineering; completed coursework for PhD in systems engineering.

- Alberto Satine: Replaced Shanti as VP of Procurement in January 2005. Was an Executive Director for AAM before promotion to VP. Was previously a General Manager for AAM's Latin American driveline facility and for AAM's International Operations and was President of two Venezuelan companies. Has three MS degrees in engineering from University of Michigan.

- Mike Flynn: Appointed VP of Procurement in November 2005. Was an Executive Director at AAM for almost 18 months before appointment. Director of Direct Materials in Procurement Department for over three years, and Director of Sales for almost two years. Has Been employed with AAM since 1994, and was employed by AAM's predecessor, GM, since 1979.

- David Dauch: Son of Dick Dauch, CEO of AAM. Served as VP in multiple areas of AAM prior to the statutory period.

- John Matton: Hired as Director of Indirect Materials in Procurement in 2003. Previously worked for Ford Motor Company for over eight years where he directed 350 people and handled $100 billion annually in purchasing and other transactions. Holds a BS in Mechanical Engineering and MS in Business Administration.

- Michael Panucci: Held the Director New Launch position in Materials from August 2002 to December 2003. Previously in automobile manufacturing industry for 42 years. At AAM had been a Plant Manger for two years and held various other Director Positions. Held a BS in Mechanical Engineering.

- Gerry Coster: Appointed Director Supply Base Management in June 2003 and Director of Product Control and Material Management in October 2004. Previously a Plant Manager and Director over the personnel department. Held a BS in operations.

- Don Joseph: Appointed to Director-Product Control and Material Management in June 2005. Prior to that, was a Plant Manager for three AAM plants. Held a MA in Business Management and a BBA.

- Jim Peters: Transferred to Director of Direct Materials position in Procurement in January 2005. Previously held other Manager positions in Procurement. Worked at Daimler Chrysler for 13 years as a Production Purchasing Buyer and a Senior Procurement Specialist.

- Michael Dorah: Appointed Director-Global Supply Base Management in October 2004. Was a Plant Manager for almost two years before the appointment. Holds a BS and MS in Materials Engineering and a MS in Business Administration.

As an initial matter, Plaintiff's failure to promote claim lacks credence, as she was actually promoted to a Director position with her male peer, Earhart. Although she was transferred out of that position within six months, so was Earhart, who could also be viewed as a comparable for purposes of this analysis.

As of the start of the statutory period, which began in June 2002, Plaintiff had held a manager position, and had never held any Vice President or Director positions with any employer. While Plaintiff was eventually promoted to a Director position, her tenure in that position was brief, as was that of her male co-Director. Accordingly, without substantial previous Director experience, she does not demonstrate the same level of experience as that of her comparables who have held Vice President positions within AAM.

In addition, unlike the majority of her comparables, Plaintiff's education does not include any engineering or technical degrees, as she has an undergraduate degree in communications and advertising and an MBA.

The people to whom Plaintiff compares herself have significant educational and professional experiences that Plaintiff does not share. Defendant has demonstrated that Plaintiff's alleged comparables were not similarly situated to her. They had qualifications, such as engineering degrees, experiences such as Plant Manger, and other positions of heightened responsibility that Plaintiff did not have. Plaintiff's personal views as to her character and her credentials, and her challenges to Defendant's judgment regarding the value of specific experience or education for various positions does not create a prima facie case. This, combined with the fact that she was, in fact, promoted to a Director position, makes her failure to promote claim insufficient to create a prima face case of discrimination and survive a summary judgment motion.

12

## 2. Retaliation

Plaintiff's claim of retaliation relies on her transfer to the position of SEIT-New Model Launch in the Materials department in June 2003 shortly after meeting with a company attorney in connection with defending another lawsuit.

To establish a prima facie case of retaliation under ELCRA, Plaintiff must show: (1) she engaged in protected activity; (2) it was known by Defendant; (3) she suffered an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse action. Meyer v. City of Center Line, 242 Mich.App. 560, 568-69 (2000). In addition, the adverse action (1) must be "more than 'mere inconvenience or an alteration of job responsibilities,' and (2) must have an objective basis for demonstrating that the change is adverse, rather than the mere subjective impressions of the plaintiff." Id. at 569.

Under the ELCRA, giving truthful information to participate in a civil rights investigation under the Act is a protected activity. M.C.L. 37.2701(a). Plaintiff's conversation with the investigating attorney regarding another employee's civil rights complaint is a protected activity.

Defendant states that while Plaintiff's job duties may have changed, she suffered no loss in pay, remained in the executive ranks, has received a pay raise, and continued to receive executive bonuses.

However, assuming that Plaintiff did suffer an adverse employment action, she fails to demonstrate the fourth element of her claim; namely that her meeting with the company attorney was a significant factor leading to such action. Under Michigan law, participation in activities protected by Elliott-Larsen Civil Rights Act must be a significant factor leading to the Plaintiff's adverse employment action to establish prima facie case of retaliation. Kroll v. Disney Store, Inc.,

13

899 F.Supp. 344, 348 (E.D.Mich. 1995). Plaintiff points only to affidavit testimony by CEO Dick Dauch that he received "periodic updates" on litigation matters. However, in the same affidavit, Dauch states that the decision to demote Plaintiff was made without his involvement. Dauch states that he was "informed" of the decision, and ultimately approved it. However, there is no indication that Dauch's periodic updates regarding litigation included specifics regarding Plaintiff's conversations with counsel, or that the decision to demote Plaintiff was made because of such conversations.

In order for her retaliation claim to survive, Plaintiff must provide more concrete evidence of the relationship between her conversation with outside counsel and the decision to demote her. The timing of the decision to demote Plaintiff is not, in itself, sufficent. "A temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action. Something more than a temporal connection between protected conduce and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." West v. General Motors, 469 Mich. 177, 186 (2003).

Plaintiff's retaliation claim can not be sustained.

**B.     EPA Claim**

Plaintiff contends that she is and has been paid substantially less than men who are or were similarly situated to her, in violation of the Equal Pay Act.

The EPA states, in relevant part:

**(d) Prohibition of sex discrimination**

(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the

14

opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1).

To establish a prima facie case under the EPA, Plaintiff must show that Defendant paid her lower wages than were paid to males for equal work for a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions. Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974). If Plaintiff makes this showing, then Defendant may show that the pay differential is justified by a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or any factor other than gender. Id.

Plaintiff argues, in support of her EPA claim, that her salary, which was less than Panucci's, violates the EPA. She states that Panucci changed the position that they both held, adding to new elements to it that increased the workload compared to what Raheja, Panucci's predecessor, did. She further argues that she has performed the same or more work than Panucci performed.

In its motion, Defendant states that Plaintiff cannot show that she was paid less than her alleged comparables for "equal work on jobs the performance of which requires equal skill, effort and responsibility and which are performed under similar working conditions. Corning Glass Works, 417 U.S. at 195. Defendant points out that when Plaintiff reported to Earhart, she was actually paid more than Earhart was paid, even though he was her supervisor. In addition, when Conti transferred to the Director position, she did not lose pay, remained an executive, and continued to receive executive bonuses. In contrast, Earhart, was, at the same time, demoted to a non-

executive position and lost his eligibility for executive bonuses.

In addition, Defendant states that Plaintiff was paid more in the New Model Launch Position than Satish Raheja, who held the position for more than eight years before she did, and whose tenure in the position ended less than a year before Plaintiff took it over.

Finally, Defendant explains that Panucci was paid a higher salary as a result of his engineering background and over forty years of experience in the industry. Defendant points out that Panucci, like Plaintiff, did not receive a raise upon his transfer to the New Model Launch position, but rather retained his previous salary from an earlier position.

The Court finds that Plaintiff has failed to establish an EPA violation. The evidence demonstrates that Plaintiff was paid more than two of three of her comparables, Saheja and Earhart. Furthermore, the record shows that Plaintiff's salary simply reflected her salary level prior to taking over the New Model Launch position, just as Panucci's salary did after he took over that same position.

**V.     Order**

Plaintiff has failed to establish a prima facie case of gender discrimination in violation of the ELCRA, and has failed to establish a violation of the EPA.

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED.

                                                  s/Bernard A. Friedman
                                                  Bernard A. Friedman
                                                  United States District Judge

Dated: February 5, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 5, 2008, by electronic and/or ordinary mail.

                                                  s/Carol Mullins
                                                  Case Manager